CENTRAL WHOLESALE COMPANY *v.* WOLVERINE INSURANCE COMPANY.

1. INSURANCE—AUTOMOBILES—AUTOMATIC COVERAGE—SUBSTITUTE VEHICLES.

Provisions of automobile insurance policy for automatic insurance for newly-acquired vehicles replacing an owned vehicle, or an additionally-acquired vehicle where insurer insures all automobiles owned by the insured, or substitute vehicles for those being repaired, and for fleet vehicles *held,* not to cover vehicle which parties stipulated was owned by another corporation and which was not being used as a substitute vehicle at time it was involved in accident for which insured claimed coverage under policy for expense in defending suits and sum insured had paid in settlement.

2. SAME—AUTOMOBILES—COLLISION.

Liability incurred by virtue of collision of truck and passenger car *held,* to be outside the scope of the insuring provisions of the policy covering plaintiff's vehicles since the truck causing the collision was owned by a separate corporation, and the complaint contains no allegation that the truck was being maintained or used by plaintiff.

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 72, 100-104.
Construction and application of automobile insurance clause or substitution provision of automobile liability or indemnity policy. 34 ALR2d 936.

3. SAME—AUTOMOBILES—DEFENSE OF SUITS.

    Insurer under automobile insurance policy *held*, to have no
      duty to defend action involving vehicle not covered by policy,
      or to pay costs of defense.

Appeal from Genesee; Parker (Donn D.), J. Submitted Division 2 June 2, 1966, at Lansing. (Docket No. 399.) Decided October 25, 1966. Rehearing denied February 10, 1967.

Declaration by Central Wholesale Company, a Michigan corporation, against Wolverine Insurance Company, a Michigan corporation, for reimbursement for damages paid in settlement of a personal injury suit, and for costs of defending and investigating such suit. Judgment for defendant. Amended judgment granted plaintiff costs of defending the suit but denied reimbursement. Defendant appeals and plaintiff cross-appeals. Judgment affirmed as to reimbursement for amount of settlement and reversed as to costs of defending suit.

*Joseph & Joseph*, and *Milliken & Magee*, for plaintiff.

*Gault, Davison & Bowers*, for defendant.

McGREGOR, J. The question in this case is whether or not the defendant automobile liability insurer, Wolverine Insurance Company, has the duty to reimburse the plaintiff-insured, Central Wholesale Company, for damages paid in settlement of a personal injury suit brought by another party, along with the costs of defending and investigating such suit.

    Shortly before noon, on July 27, 1957, Robert J. Bowes, accompanied by his wife Gertrude and their children, was driving north on US-23, when his automobile was struck in the rear by a truck-tractor,

hauling a semitrailer, driven by Charles Vincent Swann. Both Mr. and Mrs. Bowes were seriously injured in the collision. Gertrude Bowes died later the same day from the injuries she received. The title to the truck was in the Central Banana Company.

Robert J. Bowes subsequently filed suits on his own behalf to recover damages for his injuries and as the administrator of his deceased wife's estate, to recover damages for wrongful death against Bell Robinson; Central Wholesale Company, a Michigan corporation, individually and doing business as Central Banana Company; Central Banana Company, Incorporated, a Michigan corporation; and Charles Vincent Swann, alleging that Central Banana Company was an instrumentality, agent and adjunct of Central Wholesale Company by virtue of its being so organized, controlled and managed by Central Wholesale, that the Central Banana Company was a sham and in reality a part of and one with Central Wholesale Company. The declarations in the Bowes suits also alleged that the building used by Central Banana Company as its place of business and much of the equipment installed in that building were actually owned by Central Wholesale Company, and that although defendants Bell Robinson and Central Wholesale Company, who operated the Central Banana Company as a partnership, purported to organize a corporation called Central Banana Company on or about January 25, 1957, yet the Central Banana Company as a corporation was a sham, because there was no change in ownership, scope of operations, management, or personnel.

Upon being sued by Bowes, the plaintiff herein, Central Wholesale Company, notified its own automobile insurer, the defendant herein, and requested the insurer to defend it in the Bowes actions. The defendant insurer declined to undertake the defense

of the Bowes suits and denied any liability under the plaintiff's insurance policy on the ground that the vehicle involved in the collision with the Bowes' vehicle was not covered by the policy because it was not included upon the schedule of vehicular equipment in the policy. The Bowes suits were dismissed upon a settlement in the amount of $20,000 of which $11,500 was paid by the insurance carrier for Central Banana Company, and $8,500 was paid by the plaintiff herein, Central Wholesale Company.

Upon the refusal of the defendant herein to reimburse the plaintiff for its share of the settlement, plaintiff brought the instant suit to recover the $8,500 and also $2,863.00, expended in the preparation of the defense against Bowes, including attorney and investigation fees. A court, sitting without a jury, tried this case upon stipulated facts.

The parties stipulated that, in 1950, Bell Robinson, a banana handling specialist, became associated with Central Wholesale Company, which was engaged in the business of selling groceries, produce, vegetables, and bananas; that the banana operation was at first conducted from the basement of Central Wholesale's offices, but in 1952 or 1953, Central Wholesale built a building especially for the banana operation which was charged rent; that a corporation was formed on January 1, 1957, known as Central Banana Company, the capital stock of which was evenly divided between Bell Robinson and Central Wholesale Company; that the original bank account established for the banana operation was left in a partnership name; that in 1960 a corporation account was opened for payroll purposes. The parties also stipulated that the truck rig which collided with the Bowes automobile was owned by Central Banana Company and driven by one of its employees, Charles Vincent Swann; that Central Banana Company had a policy of liability insurance which it paid for with its own

funds, and which covered its fleet of trucks, including the one involved in the collision; that the company which issued this policy contributed $11,500 toward the settlement made with Mr. Bowes. It was also stipulated that Central Banana paid to Central Wholesale $800 monthly rental for the banana handling facilities and that Central Banana Company paid out of its own funds all Federal income tax and all payroll withholding taxes which were due. The circuit court granted a judgment of no cause of action in favor of the defendant-insurer, but subsequently amended the judgment to award the plaintiff $2,863, the amount of costs incurred in preparing the defense against the Bowes suits.

The defendant insurance company appealed to this court from the judgment rendered below, contending that the plaintiff is entitled to no recovery. The plaintiff cross-appealed, contending that the circuit court erred in holding that the insurer was not obliged to reimburse plaintiff for its share of the settlement.

The relevant portions of the insurance policy at issue are as follows:

"Wolverine Insurance Company * * * agrees with the insured * * * subject to the limits of liability, limitations, conditions, and other terms of this policy: * * *

"COVERAGE A. BODILY INJURY LIABILITY. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, and including damages for care and loss of services, sustained by any person or persons, other than the insured and arising out of the ownership, maintenance, or use of the insured automobile including the loading and unloading thereof.

"COVERAGE B.  PROPERTY DAMAGE LIABILITY.  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of the injuries to or destruction of property including the loss of use thereof, and arising out of the ownership, maintenance, or use of the insured automobile, including the loading and unloading thereof.  *  *  *

"DEFENSE SETTLEMENT, SUPPLEMENTARY PAYMENTS. 1. As respects such insurance as is afforded by the other terms of this policy under the bodily injury liability and property damage liability coverages, the company shall:

A.  Defend in his name and behalf any suit against the insured arising from any alleged claim for bodily injury or property damage, whether such suit is groundless, false, fraudulent, or otherwise,  *  *  *

B.  *  *  *  (a) Pay all costs lawfully taxed against the insured in any such suit  *  *  *

(g)  Pay the expenses incurred in investigations, negotiations for adjustment and settlement;  *  *  *

"AUTOMOBILE DEFINED.  Except where specifically stated to the contrary, the word 'automobile' wherever used, shall include equipment permanently attached thereto and shall mean the described automobile, a land motor vehicle, trailer, semitrailer, or housetrailer, not operated on rails or crawler-treads, *  *  *

"AUTOMATIC INSURANCE FOR NEWLY-ACQUIRED OR SUBSTITUTE AUTOMOBILES.  The insurance afforded by this policy with respect to the described automobile shall also apply to any other automobile of which the named insured or spouse acquires ownership; provided it replaces the owned automobile, or if it is an additional automobile and if the company insures all automobiles owned by the named insured or spouse at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles; and provided notice of its delivery be given within the term of the policy then current; but the insurance with respect to the newly-

acquired automobile does not apply to any loss against which the named insured or spouse has other valid and collectible insurance.   *   *   *

"Automatic Fleet Endorsement.   *   *   * It is hereby understood and agreed that in addition to the motor vehicles listed herein all motor vehicles purchased by the insured during the policy term shall automatically become insured according to the provisions of said policy as soon as purchased.   *   *   *

"Use of Other Automobiles. For the purpose of this insuring agreement, the 'named insured' shall be the insured designated in   *   *   * the declarations   *   *   * and such insurance as is afforded by this policy under coverages A, B, C–1, D, E, and F, with respect to the described automobile applies with respect to any other automobile, subject to the following provisions:

"(a) With respect to coverages A and B such insurance applies to the (1) named insured   *   *   * and   *   *   * (3) any other person or organization legally responsible for the use by such named insured   *   *   * of an automobile not owned or hired by any such other person or organization."

In the first two paragraphs of the policy, the insurance company agreed to pay any personal injury and property damage liability which the insured might incur arising out of the ownership, maintenance or use of the insured vehicle. Since the truck involved in the collision is not listed in the schedule describing the covered vehicles at the date of issuance of the policy, other provisions of the contract must be examined to see if the collision vehicle is included in the scope of the term "insured automobile." The policy contains a paragraph which provides for automatic insurance coverage for newly-acquired vehicles which replace an owned vehicle, or, if it is an additionally-acquired vehicle, provided the company insures all automobiles owned by the insured, and also for a vehicle used as a substitute

for the insured's vehicle while it is in repair. The contract also contains an automatic fleet coverage provision which states that all vehicles purchased by the insured during the term of the policy automatically become insured vehicles. Since the parties to this action have stipulated that Central Banana Company was the owner of the collision vehicle and the complaint herein contains no allegation that the vehicle was used as a substitute, neither the automatic insurance provision nor the fleet coverage provision can be said to make the truck in question an insured vehicle under the terms of the policy.

The paragraph of the policy entitled "use of other automobiles," extending liability insurance protection to the named insured with respect to any automobile must be read in conjunction with the language of the two provisions on liability. Since the provision for the use of other automobiles states that the insurance coverage afforded by the bodily injury and property damage liability provisions apply to any other vehicle, these two provisions should be read by substituting "any automobile" for the term "insured automobile." It is apparent that the provision extending coverage to any automobile does not expand the insurance coverage in any other respect. Therefore, the insurer agreed to pay for all damages arising out of the ownership, maintenance, or use of any automobile. Since the parties have stipulated that ownership of the collision vehicle was in the Central Banana Company and the complaint filed herein contains no allegation that said vehicle was being maintained or used by plaintiff Central Wholesale Company, the necessary conclusion is that the liability incurred by virtue of the collision in question is outside the scope of the insuring provisions of the policy in question.

The question remains whether or not the defendant insurer was obliged to pay for the defense costs.

By the defense paragraph of the policy the insurance company agreed to pay all the expenses incurred in investigations, negotiations for adjustment and settlement, and to defend the insured against liability claims whether such suits were groundless, false, fraudulent, or otherwise, as respects the insurance afforded by the bodily injury and property damage liability coverage provisions of the policy. By the express language of the defense provision, the duty to defend and to pay the expenses of defense extend only to situations covered by the bodily and property damage liability provisions. Since the plaintiff has not given any evidence that the collision vehicle was an automobile insured under the provisions of the policy, there can be no duty on the part of the insurance company to defend or to pay the costs of defense. *Kramarczyk* v. *Jontz* (1937), 282 Mich 208.

The judgment of the trial court is affirmed in regards to the issue of reimbursement for the amount of the settlement, and reversed on the issue of the duty to defend. Judgment of no cause for action on all issues may enter. Costs are awarded to the defendant-appellant.

LESINSKI, C. J. and T. G. KAVANAGH, J., concurred.